Oye, oye, oye, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, Madam Clerk. I'm Judge King and along with Judge Wynn and Judge Richardson, we are here to hear two cases today. And our first case is Goodman v. Diggs and Professor Hashimoto. Yes, Your Honor. You and your students are representing Mr. Goodman. That's correct, Your Honor. Well, good to have you here. You're going to introduce the student counsel who will argue? Yes, thank you, Your Honor. Erica Hashimoto on behalf of Mr. Goodman. The Georgetown University Law Center's Appellate Litigation Clinic would like to introduce Priya Datta, who, with the Court's permission and with Mr. Goodman's consent, will present argument on his behalf in this case. We really appreciate your assistance, that of your students in this and all the cases that you've worked with us on. Thank you very much. Priya Datta? Thank you, Your Honor. Are you able to hear me? I can hear you well. Judge Wynn, Judge Richardson? Yes. Yes. Good to have you with us. Thank you. Go right ahead. Thank you, Your Honor. May it please the Court. Mr. Goodman's sworn complaints demonstrate a genuine dispute of material fact regarding his Eighth Amendment excessive force claim by stating facts that directly conflict the defendant's account of events. Mr. Goodman, in opposing some of the judgment and pointing out that there were facts in dispute, cited to both of his sworn affidavits the original complaint and the first amended complaint. The District Court erred in not considering these sworn complaints for two alternative reasons. First, because they meet the Rule 56C requirements and are opposing affidavits for summary judgment purposes. They retain their evidentiary value regardless of their status as pleadings. And second, because Mr. Goodman's second amended complaint specifically refers to, adopts, and incorporates by reference his verified complaints. Mr. Goodman's sworn complaints raise a genuine dispute of material fact. He suffered abuse so disproportionate to any conceivably legitimate need that a jury could reasonably infer that the defendants acted with malicious intent rather than to secure compliance. Mr. Goodman was not resisting and did not pose a security This Judge King, he filed a third complaint with his second amended complaint that wasn't sworn. There was not an affidavit. Why didn't he just, by doing that, why didn't he abandon those first two complaints? That's correct, Your Honor. Mr. Goodman's second amended complaint was not sworn. However, because Mr. Goodman's second amended complaint specifically referred to, adopts, and incorporates by reference his verified complaints, the evidentiary value of his sworn complaints is not negated. Mr. Goodman's sworn complaints meet the requirements. Do we have any, do we have any authority that the legal proposition that you just pronounced is in fact the law in this circuit? Your Honor, this circuit has never ruled on the issue of the evidentiary value of a sworn complaint that is later superseded in its status as a pleading. However, other circuits have held that when the second amended complaint does not affect the evidentiary significance of the verified complaints, those earlier sworn complaints retain their evidentiary value and are opposing affidavits for summary judgment purposes that should be considered by the district court. So you don't, you don't have any authority in this circuit for that proposition that you pronounce. You want us to make some new law here? Yes, yes, Your Honor. That's correct. Right ahead, I'm sorry. Counsel, before you move on, does it matter, and at least for your proposed rule, does it matter whether the two previous sworn complaints are different from or inconsistent with the second amended complaint? Is that factor important for your analysis? Your Honor, that is the rule in other circuits. However, if this court does not find that reasoning persuasive, this court can simply adopt a rule that sworn requirements for an affidavit under Rule 56C retain their evidentiary value, regardless of whether or not they are later superseded in their capacity as pleadings, because the evidentiary and pleading purposes of the documents are distinct. Although I thought, and at least we do have at least one prior case, I think Stevenson, where we had inconsistent affidavits and the court there seemed to suggest that they would discount the earlier affidavit to the extent it was inconsistent with a later one. Why wouldn't we have the same principle apply with these three different documents? Your Honor, to the extent that a later filed complaint negates or contradicts any sworn complaints, then those statements by themselves may be negated. However, the overall evidentiary value of the documents, to the extent that other statements are not contradicted, those statements retain their evidentiary value. And just because certain statements may be later contradicted, the complaint as a whole, to the extent that it meets those Rule 56 requirements, would retain its evidentiary value. And in this case... I'm sorry, go ahead Judge Wren. I just wanted to ask as a follow-up with regard to the operative and the prior complaints here, are there any really factual differences between the three of them? Your Honor, Mr. Goodman's second amended complaint identified his only changes, which were adding the defendant's names that he had learned. So he swapped the defendant's names out where he had previously written John and Jane Doe, and there was an update to the remedies section. In his second amended complaint, he specifically stated, please be advised that the following is a resubmitted slash modified copy of my amended complaint. And he identified those changes, which were his only changes. Far from overriding... What makes it interesting is that when we use the term amended, even though our case law has indicated the use of the word supersedes, an amended seems to add to it. But in this instance, if there's no factual differences that would seem to import some of the concerns that Judge Richardson raised, added with the fact that it expressly incorporates the other ones by reference. And in most legal documents, the incorporation of a prior document or other information seems to make it a part of that. There is the added factor here, and I don't know to what extent we need to incorporate to add this, is that this individual was prosaic in this proceeding at that time, as I understand. Is that correct? That's correct, Your Honor. And as you mentioned, far from overriding his earlier complaints, Mr. Goodman's second amended complaint specifically referred to and incorporated by reference his the same facts about abuse and injuries he suffered at the hands of the defendants. Additionally, in his opposition for summary judgment, Mr. Goodman specifically cited to the original complaint and the first amended complaint. And Mr. Goodman's sworn complaints, had they been considered, raised a genuine dispute of material fact. He suffered abuse so disproportionate to any conceivably legitimate need that a jury could reasonably infer that the intent rather than to secure compliance. Mr. Goodman was not resisting and did not pose a security threat justifying the level of force used. Mr. Goodman uses a wheelchair and is unable to stand or walk without his cane or assistance. His sworn affidavits show that defendants maliciously injured him by smashing his head into the concrete floor, standing and kneeling on his neck and back, and twice dragging him across the floor. After the incident. Counsel, can I just, I don't want you to stop telling the facts but I want to understand where we are in the decision tree. If we agree with you that the district court aired and failing to consider the sworn complaints. It is the right result for us to then vacate and remand and allow the district court to analyze the specifics of those sworn complaints in analyzing the substantive questions that are at issue, or do you contend that we as an initial matter ought to be the first ones to do that. Your Honor, that's correct. We are asking that this court reverse the grant of summary judgment and remand this case back to the district court to consider those issues. So the first of those two alternatives presented by Judge Richardson is the one that you asked for. Simply remand and let the, let the district court take a fresh look at it. Yes, Your Honor. Exactly. Additionally, I want to be clear. I want to be clear in terms of where we are. The summary judgment, you know, whether what the district court does with it is what they do with it, but the issue, the question is, is there a disputed fact that would preclude summary judgment, which would then mean that it would go to trial unless there's something that summary judgment would indicate that would make facts undisputed. That's correct, Your Honor. Is that the procedure? Yes. So I'm trying to understand in terms of what we could, I'm sort of interested in Judge Richardson's question in terms of which way, how we would be able to resolve if the complaint, if the verified complaint is sufficient to raise issues that are now disputed, then that kicks it out of summary judgment. Once that happens, we kind of take our hands off of it and give it back to the trial court and say, no, this is not a procedure you're going to do. It could be trial, could be some other preliminary matter that could resolve it. Your Honor, in addition to reversing the grant of summary judgment and remanding this case for trial because there are disputed issues of facts once the sworn complaints are considered, we are also asking that this court instructs the district court to rule on Mr. Go back to Judge Wynn's question before you get to discovery, and I'm happy for you to talk about the discovery as you will. But in essence, there are two options, and Judge Wynn proposed the second option that I issued or mentioned earlier, which was a finding that the district court substantively erred in granting summary judgment. The former option, the first option that I suggested and that you initially agreed would have been a remand based on the procedural error that the district court ignored relevant portions of the record, did not consider those verified complaints, and that procedural error under our case law, like Gray v. Laws, tells us that that procedural mistake is sufficient to vacate and remand without reaching the substantive question of whether these particular amended or these particular complaints would be sufficient to survive summary judgment. That's the substantive question that has not yet been ruled on, and that either we could do on our own or we could remand for the district court to do as an initial matter. Is that fair? Yes, Your Honor. We're asking this court to reverse based on that procedural error and instruct the district court to proceed to trial to consider the substantive issues. All right, but I guess that's maybe the divide. I'm not disagreeing in terms of where Judge Richardson, how he's analyzed it. It is a step that in our situation when we look at, we're not blind to what these affidavits say, it is no question there are disputed material facts there. I mean, they are diametrically opposed by the statements that are being made that the trial judge accepted is undisputed, but it is patent on his face, but I would agree you could send it back to, and we can do that. I mean, in essence, that's what we'll do is simply say summary judgment is inappropriate. Don't have to get into the whole basis. Send it back, and then the trial judge then will then move to the next procedural step, which would be to analyze it and determine if there are disputed facts, which I'm comfortable with doing that either way, but I think, I don't think there's a big difference in the proposals, even though they are two different ways in which to actually procedurally send it back. As I understand the position of Mr. Goodman, thank you for Mr. Goodman though, also is that they want him to have access to further discovery, that there were some, either that discovery request that were never ruled upon, and they want to have that finished. I'd like to also ask them, she can tell us whether that's right or wrong, but I want to ask them if they're going to abandon him after we send it back, and he's going to be pro se through these discovery proceedings and trial if there is one, or whether somebody's going to stick with him and give him a lawyer. What are you going to do about that? First, your honor, it is correct that we are also asserting that Mr. Goodman was entitled to discovery before summary judgment was entered. Additionally, unfortunately, I do not have an answer on Mr. Goodman's counsel following the resolution of this case. I apologize. But can you get off of this case without the court agreeing to it? Your honor, unfortunately, I'm not sure. All right. Ms. Dotta, do you know whether you were appointed by the Fourth Circuit or whether you were appointed by the district court? Your honor, we were appointed by the Fourth Circuit. They were just appointed. Yeah, I understand. I checked the record on that, I think. You were appointed by our clerk's office because the case was going to proceed to briefing and probably argument. And you're here for the appeal. And that's really good because he gets hotshot lawyers for an appeal. And then when he goes back, he's stuck again without a legal house. I just wonder what's going to happen. I guess you'll have to do the best you can. And that's what he was doing. That's the reason that we have this pro se rule, that we have to give them the benefit of the liberal construction of everything, I guess. And that's tough for the district court, too, when you've got a some pro se fella that's in jail that's going to be having a trial. But they have to work around also. You go right ahead, Ms. Dotta, with your position. Your honors, I see that my time has expired. Okay. You've saved some rebuttal time, and we really appreciate your help. And we're going to hear from you again. And Mr. Rosen is here for the Commonwealth Warden, and he's going to explain to us why you're wrong. Mr. Rosen? Thank you. Good afternoon, your honors. Jeff Rosen on behalf of the appellees. Yes, the lower court properly granted summary judgment where the appellant's prior verified complaints had been amended, and his opposition failed to establish dispute of material facts. Rule 56- But he had two affidavits filed that do dispute the facts, Mr. Rosen. Well, he filed two verified complaints, then amended a second complaint, your honor, and normally- If she's right, if your colleague there from Georgetown is correct, those first two complaints have to be deemed affidavits, supporting affidavits. And the only question is whether they dispute your version of the facts, and they appear to do so. So I don't know how you can put a straight face to come in here and take that position, but you're an officer of the court. I understand, judge. If you consider, if she's right on the law, there are disputed facts. Isn't that correct? Well, no, judge, I don't believe that there are disputed facts. Rule 56 requires Mr. Goodman to specifically refute the proposed undisputed facts in our motion for summary judgment, and he has failed to do so. He has not responded to those undisputed facts. Rule 56- That sounds kind of interesting to me. I'm not sure where that goes, but I will point out in line with Judge King's question, if you don't address this issue at all in your brief, you don't even mention these verified complaints that the appellate makes a big deal out of it that the court should have Well, because the lower court in footnote four says, he considers that and says, moreover, even if plaintiff's response had been sworn, the non-moving party may not defeat a properly supported summary judgment motion by simply substituting conclusory allegations of the complaint or answer. And so the lower court even ruled in the way it did, assuming that the plaintiff's opposition was sworn. He said, would not have made a difference. So to follow up on that, then going back to Judge Richardson's delineation of two different things that we can do, it seems as though you are saying that we are left with the last option, and that is to look at those verified complaints and determine if the evidence, if they do create disputed issues of fact. Is that where you're going with this? Well, no, what I was saying was that the court considered the opposition as if, even if it were sworn. And so I think that- I understand that aspect of it. In other words, that we are now, you were saying the judge did consider those verified complaints, if I understand you right. And the judge determined that they did not create an issue of disputed facts. So the issue on appeal is, did they in fact create an issue of disputed fact in light of what we have before us? Is that what you're saying? That's all I'm saying. I'm not trying to argue with you, I'm trying to understand your position. Yes, yes, that's our position. And that was what the court said, even though he didn't acknowledge consideration of the verified complaints. And that even if- Help me understand that, because when I look at the language that you've just pointed to, he says, even if his unsworn allegations in the opposition were considered, he failed to challenge the core facts presented by the defendants. Right. That's exactly it. Through sworn declarations. Correct. But the point is, is if we consider the first two, he did challenge the core facts based on the sworn declarations. I mean, the point there, it seems to me, is that he's saying the opposition wouldn't be enough. But he's not saying that the two original complaints would not be enough. He's not considering those complaints at all. Well, he doesn't mention the complaints, I'll agree with you there, judge, he says, if you consider the opposition to be sworn. But what I read from his footnote is that, even if you consider the allegations in the complaint, that these deputies beat him for no apparent reason, that those facts are not sufficient to make a dispute of the core facts when we presented. But that's not, but you do understand that's not what he says, right? He says, he talks about the opposition, if the opposition was sworn. Right. But that's not, the argument being made here is not that the opposition needed to be sworn. But in fact, if there were two sworn effective affidavits, that being the original sworn complaints, and he doesn't mention those or do any analysis on those at all, does he? No, he does not. I'll agree with you there. But of course, as counsel for Appellant has totally has admitted, there is no case to support that position. In Young versus City of Mount Rainier, the court held that. Before you go further, let me make sure I understand where we are, because I absolutely agree with Judge Richardson in terms of characterization of what happened here. What I'm not clear on is your position. You seem to have indicated that the judge did consider it and he didn't see anything there from the verified complaints. And now you're saying, well, we don't have a law in this state to deal with the verified complaints and argument again, you didn't even confront in your briefs. You haven't mentioned that at all in anything that you've written before this court. And so I'm wondering why you didn't do that. And even if you, well, why don't you answer that question? I'm trying to understand why you didn't address that. And maybe it'd be because of the way you thought of it in the first instance. Well, I mean, the Appellant in their briefs admitted that they were relying on a Seventh Circuit case, that there was no case to support their position. That was, they admitted that in their briefs. There's more than the Second Circuit on it. There are other circuits that have dealt with that. What you have is you have an amended complaint that incorporates the other complaints in it. It's filed by a pro se person. And there's really no factual, significant, factual differences between the amended one and that. Which, you know, when you look at that, even in a fairness situation, you'd wonder, well, okay, it incorporated. So incorporates mean there it is. At least you would address it. But you didn't even address it. Well, Judge, I think that the record is clear from its face. What the court did is clear that he took and he reviewed the undisputed material fact and the opposition and said even if the opposition were sworn, it would be insufficient. That's what the record indicates, Judge. Okay. Well, here's where we're going. And that's where I'm trying to get to where we're going. We said in Williams versus Griffin that a verified complaint is the equivalent of an affidavit at summary judgment. So if we are there, and what you are saying, then as I said before, it sounds like to me you are saying we are in the second part of what Judge Richardson, the other alternative, we're left with that. We now have to look at these sworn affidavits and determine do they create an issue of fact. I don't think the district court addressed it because it dealt with the unsworn one, but you seem to think they did. So but that's what you are saying we are. We should look to see if there are disputed facts between the verified complaints and what the judge characterized as being undisputed statements. Yes. Is that correct? Yes. Do you agree that the facts are disputed? No, I do not. But let me finish the question. Oh, sorry. Sorry, Your Honor. If the two, the first two complaints, or three complaints, the first two complaints, the sworn complaints, the verified complaints, if they're considered as against your submission on the summary judgment, there are disputed facts, yes or no? I, Judge, I would say that the facts do not respond individually to each of our undisputed facts. The sworn complaints do not respond to our individual undisputed facts. All right. Can I go back to Judge Wynn's point in just a minute? You started to make an argument based on Mount Rainier, which I take it to be the superseding the original and rendering no legal effect argument. Can you tell me where in your brief you made that argument, or any semblance of that argument? I mean, I understand the argument. I don't think it prevails. But I want to know whether, like, did you make it at all? Well, no, we didn't. That was raised in the They say that as a representation of the law, an accurate representation of the law, and that is the law. We did not address in our brief. The appellants did. And did you respond to their argument that the district court should have considered the first two complaints? I mean, generally speaking, when an appellant raises an argument and an appellee refuses to respond to it, we don't look too deeply at it, do we? Well, I understand, Judge. As I said, I think the record is clear from the lower court's decision. We used to say in state court where I practice law, in that situation as framed by Judge Richardson, it was taken for admitted. It was taken for admitted. If you didn't respond to their position, we took it as admitted. What do you think of that proposition? Well, Judge, I think that I cannot rise any higher than the lower court's decision. The lower court didn't address it. Well, no, I think the lower court said that they, if you considered his opposition sworn, even in that case, he would still find a disputed fact. So, as I said, I think that everybody agrees, but everybody agrees that the opposition was not sworn. So, that's just like a false argument, right? Because you're saying, well, if the opposition was sworn, that's fine, but we're not talking about the opposition. We're talking about the first two complaints, right? And that's their argument. And the implication of your argument, everything you say in your brief depends on the idea that those two complaints should not be considered. I get that. That's implicit in what you're saying. But what I don't see in your brief is anywhere where you actually argue that, that the first two complaints should not have been considered by the district court. You fail to support the district court's decision in that regard. Well, Judge, I can't argue with that. I mean, I think the brief says what it says. I mean, I will agree with you on that issue. But my point was that on the issue of undisputed fact, the court very, in great detail, went through the facts that were alleged in our motion for summary judgment, including the affidavits from each defendant, the incident reports that were at joint appendix 259 through 261, and all the detailed facts. And it's clear the court concluded that the inmate was uncooperative and resistant, and that in his view, the facts were clear that the officer used the appropriate force under the circumstances. The plaintiff alleges that he was beaten by deputies for no apparent reason, which is not supported by the evidence or his allegations. It's merely bold conclusory opinions. The court did go through in detail all of the evidence that was supported, that was provided to it in great detail, including the incident reports, the affidavits, the nurse's report. And it's clear, even from the defendant's own pleadings, that he refused to cooperate with the deputies. He admits that. And that he got into a fight with the deputies. He admits that also. So under those circumstances, I think the court was reasonable in concluding that there was no dispute as to the facts. I think that that was an appropriate decision based upon the evidence beforehand. And you maintain that's what the verified complaints, the facts allege? In other words, you are saying that the facts in that verified complaint don't respond to that differently? Other than saying that the odd deputies beat him for no reason, the verified complaints also admit that when he was told to go to the cell, he refused, he sat down and threw himself on the floor, and then he was uncooperative. So that's what the verified complaints do not say. He threw himself on the floor, unless that's a different complaint than I see. He doesn't say anything at all like that. Well, he said, he said, His facts are totally different from the opposition facts, which I grant you are there. I'm not saying they don't have them, but we're talking about creating disputed issues of fact. And you were telling us where the judge considered it and came and said it was just conclusions. Those are not conclusions. Those are factual statements that he's making. Now, whether he's to be to believe or not is a question, but that's not what you do at summary judgment. You don't weigh the evidence. Well, as I said, I think I believe that the court was considering whether the Mr. Goodman's position was created an issue of dispute in light of the detailed undisputed facts that were provided by the appellees. And as far as the discovery issue, the appellees provided all the record applicable records from that were available by the Virginia Beach Jail and in support of summary judgment that we know of the jail records that would have been applicable to Mr. Goodman's case. And so you're saying that he got all the discovery that he was, he asked for? Well, he got the discovery from the jail that he got that he asked for. He asked for the things, but medical, he got his medical records and all of that. He got the record. Yes. He got the medical record that was of this incident. He was only there for one day. So he got, he got the medical, well, it was, it was provided. Excuse me. What about the photograph? Did he get into that? Uh, there was no photograph of the incident. There was no photograph taken, uh, other than his, of his injuries. How about eyewitness testimony? He asked for that. There was, there is none of that. We don't have, there was no, there was no such evidence at the Virginia Beach Jail. Well, you, well, you did have a video, but, but apparently the video doesn't exist. How, how soon after the incident was the video not preserved? I guess I want to destroy it, but how is it not preserved? How soon after the incident? The video at the, at, um, uh, the, uh, this jail, as in most jails is on a automatic, uh, write over system. So unless video is preserved. Is that true when you have an inquiry as to an incident that occurred to this nature or you, you, you have something going on? Did you just automatically get rid of the video? Well, no, we don't. Uh, well, as I said, it's preserved. If there is a, either a complaint made by the inmate or an internal affairs investigation, neither of which was what occurred at the time. And so that's why there was no record made of it. Uh, it was at the time the, the video was reviewed by the command staff. There was no improper use of force, uh, found by the supervisors and therefore there was no, it was not preserved. Uh, it's real impossible to preserve every video in a jail, uh, in a jail facility. How soon after was it, was it, how soon after was it not preserved? 30 days. It's written over. 30 days. That's the usual practice, uh, at most, at most facilities because no one has unlimited, uh, cloud storage, uh, for the videotape. So, um, so, so didn't he make a complaint to the nurse who was treating him? Well, he's, there's a, there's a record in the note that he would like to see the video, but the nurse is not, is a part of the medical contractor. He, there's a formal way to make a request to do that, to file a grievance. He never did that. He never filed any type of form of complaint while at the facility or subsequently. And so by making a comment to the nurse would not necessarily become a formal grievance at the facility. Um, so, uh, that's, you know, that, that's what, that's what happened. Of course, uh, that we filed an affidavit as to the circumstances. And, uh, when, when did he first ask for this video? Well, he never, I mean, never made a request for the video from the jail. Where did he make the request from? Well, I think there's an, there's an entry in the nursing note, which is in the record. He made it before he left, he made it before he left the jail. He made it before, that's nice, didn't he? He made it. You say to the nurse and that doesn't count. She was one of the, she was, she was the one who was right there. She worked for the jail. Well, she actually worked for medical subcontractor judge. She didn't work for the jail. She worked, she was working for you all. She was working for you. Yeah. Well, I understand that judge, but that, but unless he makes a file request to file the grievance with the jail staff, a communication form, uh, there was no, no difference between what this nurse was doing. And the fact that if he said something to her, you guys would say you didn't even know anything about it. If he asked for a video, so there's no connection there. He is a man in prison or in a custodial situation. He asked the nurse and tells him he makes a complaint. He says he wants a video. And, but you saying, well, you know, we don't have to pay any attention to what he says to the nurse. He even asked anything about it. We could just destroy this video. Well, judge, it wasn't destroyed. As I said, it was automatically, it was just not destruction. Well, I don't know if it's any difference. If you overwrite something, you can't get it anymore. It wouldn't make any difference if you burned it up or maybe there is, I don't know. Unless you're telling me there's a way it can be retrieved. No, once it's overwritten, judge, it's a function of storage. Once it's overwritten, it's overwritten. Um, but that's what I kind of, I mean, I use the word destroyed, but that might sound a little harsh to you, but the effect is the same, isn't it? Well, no, I mean, for a spoliation of evidence, there has to be a, a willful, uh, conduct result in lost evidence, not negligent or anything else. And so there was no willful destruction of evidence in this situation. What it was, you had a policy that you get rid of it for 30 days. You had a policy to get rid of it after 30 days and you got rid of it after 30 days. As I understand the record here. Well, there was not a policy. And if you have a trial, judge will have to decide whether to give an instruction that, uh, that can be taken into account by the jury. It appears my time is up. Uh, but for the reasons stated in our brief and today's oral argument, I would request the court to affirm the decision of the lower court. Thank you, your honors. Thank you, Mr. Rosen. Uh, well, I want to be sure before you leave out, I'm not quite, uh, satisfied with this, uh, video. He did say in the nurse's report that he wanted this video for a lawsuit against those involved. And then, and then the, uh, the, the parties didn't watch this. Do you watch every video that is, you know, if there's something that goes on, why would, why do they watch it? Well, I think, I think the video was reviewed after the incident reports were filed. What incident report? What was the incident report? The incident reports of the at, um, uh, JA 259, 260, and 261. And so I understand why videos as a matter of course would be overwritten, but if you've got an incident report or something going on, why in the world would you have a policy to immediately then within 30 days, just, just, uh, override it, as you say, or not preserve it. Well, judge, it's not a policy. It's a function of the equipment and storage, uh, storage capability. Is there a function that you could have to, to preserve it? As I said, if there's a, uh, inmate complaint or grievance or an internal affairs matter. I understand that, but what you have here is an individual who has needed medical treatment. You don't know his side of what happened. You didn't know, only know the side of your officers. You then view the video and just say, well, just let it be an override it. Knowing that if that video exonerates your officers, why in the world would you get rid of it? Well, I agree with you there. And I always tell my clients to maintain any, uh, any video, uh, that you need to tell your clients that there are instances in which something like this, if it did go to a jury, it could be an adverse inference. I have told them that under these circumstances, it very well could be that if you chose to do something like that, it really doesn't look good. Judge, I understand, but unfortunately we can't, we cannot have video preserved in every situation. It's just not enough. You don't have it in every situation. You have one in which an individual has to go and be medically treated. You know, there's an incident report, then they actually view it. And you're not talking about preserving everything you ever did the whole day. You're talking about just the, this incident, which is just solid proof. He didn't, you know, that didn't happen the way he did. And yet you don't do it. And then, well, I'm okay. All right. I'll, I'll leave it alone, but I just don't understand quite why procedurally it went that way. And even though you've got a nurse who's maybe hired by someone else, they really, he doesn't know that he's reporting this to the nurse and tell him he wants this for a lawsuit. I mean, and, and he said things didn't go well for him at all, but, but you just let the thing be overrided when that is just, man, it just exonerates them from, from your perspective. If we had the video, it very well could exonerate us, but we don't have it. So we have to do with what we've got. Council, can I just, what I'm trying to say to you is that what you may be saying, I don't want to do your clients or not, but that creates an adverse inference in many instances. Well, I, Judge, that's a, that is a possibility. And we always counsel my clients to maintain the video when they can. I agree with you, but I'm not there when the incidents occur. So I can only do, I can do what my, do what my clients have been able to do. But I want to be, and I think we can end it, but I want to be clear. I'm not talking about what you did. I'm talking about what they did. You're okay, unless, unless you're responsible for doing this or the policy of it. But I'm not getting into that. I mean, I'm just saying in terms of what the facts here seems to indicate on its face does not look good for a reason not to preserve that. I understand. Whether it is, whether it's innocent or not, I don't know, but I'm just saying it don't look good. I understand. It's always best to preserve video of any incidents that, that, uh, that they're involved with. I agree with you there. Let me ask Judge Richardson, do you have any follow-up questions, Judge Richardson? I don't. Thank you. Thank you, Judge. Thank you, Mr. Rosen. Thank you, Your Honors. Ms. Donna, you've got some rebuttal time. Thank you, Your Honor. Your Honors, appellees make no argument as to why Mr. Goodman's sworn affidavits should not be considered. Mr. Goodman's sworn complaints meet the requirements for an affidavit under Rule 56C. They were sworn under penalty of perjury and based on personal knowledge. Once these sworn complaints are considered, they demonstrate several facts that conflict with defendant's account of events and would allow a jury to reasonably conclude that defendants dragged and beat Mr. Goodman to punish harm or embarrass him rather than to maintain order or discipline. After the incident, defendants even left Mr. Goodman on the floor, where he was later found lying in a pool of darkened and crusted blood, which is confirmed by the jail nurse's report on JA-156. This assault caused multiple injuries, lacerating his head, and causing severe neck, back, shoulder, and hand pain. Additionally, Mr. Goodman's verified complaints do not state that he threw himself on the floor. His original sworn complaint states, quote, note with an asterisk, I did not resist. I simply relaxed, laid flat, and was dragged across concrete floor into the holding cell. Additionally, he noted that he is unable to stand without his cane or assistance. And far from providing statements. Counsel, counsel, can I, can I ask a question? Might not, might not be relevant at this stage, but I wondered about it. And so I wanted to get your thoughts. Obviously your client has particular health problems that make him susceptible to lots of different additional problems. To what extent is that considered or should that be considered or must that be considered in evaluating the appropriate degree of force that could be used by officers in response to whatever actions he took? Your Honor, the defendants continued their abuse even after Mr. Goodman informed them of his spinal cord complications and neck surgeries. They were aware of Mr. Goodman's disabilities. However, they continued, continued using a great level of force against him. And do you contend that that, what I'm asking, I understand that those are the facts or at least the facts as your client alleges. My question is to what extent is that relevant to the sort of substantive inquiry of whether this was done improperly or properly? The fact that Mr. Goodman is disabled and has these health problems weighs toward a finding of malicious intent. Okay. And why, I guess is what I'm, I understand that's what you want to say, but I'm just, I'm curious why, to what extent does it, you know, if you have an eggshell plaintiff, sometimes we say that doesn't matter. In other instances, we say, you know, the nature of the individual or the threat that they pose is relevant. And I'm just curious why you think it's relevant here? Sure. Your Honor, because Mr. Goodman was disabled and because the defendants knew about that, the fact that they still continued to use this level of force against him would allow a jury to draw an instance of malicious intent. Despite knowing of Mr. Goodman's conditions, the defendants still grabbed him by the collar, dragged him across the floor, and even slammed his head into the concrete floor, causing lasting injuries and a great deal of pain for Mr. Goodman. Additionally, they left him on the concrete floor in a pool of his own blood with a laceration to his head, which is confirmed by the jail nurse's report. Additionally, Mr. Goodman did request that that video be preserved, which is also confirmed in the jail nurse's report. Counsel, do you know when, separate from the report to the nurse, do you know when in the process or how long after this incident he made any sort of administrative complaint with the jail for his abuse? Your Honor, upon Mr. Goodman's return to the Chesapeake County jail, the next morning he did file an incident report. That was the morning of November 8, 2012, which was the day after this. Is that in the record? Your Honor, that is in the record. I'm sorry. I don't need to know. You don't need to have a memory of when it is. I just want to know. Is that November 8 complaint made by your client included as part of the record? Yes, Your Honor. That incident report is a part of it. Your Honor, I see my time is expiring. If there are no further questions, we ask that the court reverse the grant of summary judgment and remand the case to the district court for pretrial discovery. Thank you. Thank you, Ms. Dottas. I want to again thank you and the Georgetown Clinic for assisting our court in this case. If we were in Richmond, we would at this time leave the bench and go to the well of the court and congratulate both the lawyers on providing us with fine assistance. Maybe the next time you're with us, we'll be able to do that. Thank you, Your Honor. In the present situation, we'll simply take this case under advisement, Madam Clerk, and release these lawyers, and we'll be prepared to call the next case. Thank you, Your Honors.
judges: Robert B. King, James A. Wynn Jr., Julius N. Richardson